[No. 33434. Department One. March 8, 1956.]

LEONARD DOWNIE, *Respondent*, v. ROSS M. COOLEDGE *et al.,*
*Appellants.*[1]

[1]Reported in 294 P. (2d) 926.

*Clarke, Stone & Hoover* and *F. Robert Lee,* for appellants.

*Bogle, Bogle & Gates,* for respondent.

DONWORTH, J.—This is an action commenced by Leonard Downie, an accommodation endorser on a negotiable promissory note, against the immediate prior endorser, defendant Ross M. Cooledge. The marital community, composed of Ross M. Cooledge and Margaret S. Cooledge, his wife, was joined as a party defendant, but we shall hereinafter refer to Ross M. Cooledge as if he were the sole defendant.

Defendant filed an answer admitting the endorsement of the note and containing four affirmative defenses and a cross-complaint. On plaintiff's demurrer and motions directed to the answer, the second and fourth affirmative defenses and the cross-complaint were eliminated from the case, and certain conclusions were stricken from the first affirmative defense. The cause proceeded to trial before the court without a jury. On April 14, 1955, following the conclusion of the trial, the court entered a formal order striking defendant's first affirmative defense. On the same day, the court made findings of fact, conclusions of law, and entered judgment for plaintiff in the sum of $7,121, the

amount which he had paid to the payee of the note, together with interest at six per cent per annum from October 6, 1953, until paid, and eleven hundred dollars as reasonable attorneys' fees. From this judgment, defendant now appeals to this court.

Before discussing the assignments of error, we shall briefly relate the circumstances giving rise to the execution of the promissory note.

Ed E. Horgan, G. L. Risbell, Ralph Fleming, and Ross M. Cooledge were the principal stockholders in the Horgan Packing Company, an Oregon corporation engaged in the food packing business at Astoria, which was exploiting a new food product. Prior to October 31, 1952, the estimated liabilities of the corporation were in excess of seventy-five hundred dollars, and it had no cash or operating capital.

The stockholders had applied to several banks for a corporate loan, but had been unable to secure the necessary funds to operate the business. On October 31, 1952, following extended negotiations, the Peoples National Bank of Washington loaned seventy-five hundred dollars to the corporation, upon the condition that Mr. Leonard Downie, respondent herein, endorse the corporation's promissory note, which read as follows:

"2440 Due 4-30-53 HORGAN PACKING COMPANY
Seattle, Washington, October 31, 1952, $7,500.00
Six (6) months after date, the maker hereof promises to pay to the order of PEOPLES NATIONAL BANK OF WASHINGTON In Seattle at its First Avenue Branch, 801 First Avenue, Seattle, Wash., Seven Thousand Five Hundred ($7,500.00) Dollars, for value received, with interest thereon at the rate of five per cent per annum from date hereof until paid, interest payable quarterly. Principal and interest payable in Lawful Money of the United States. For value received, each and every party to this note binds himself, jointly and severally, hereon as principal and not as surety, and all parties hereto, including indorsers, sureties, and guarantors, hereby severally waive presentment, demand, protest, notice of non-payment hereof, any release or discharge arising from any extension of time, discharge of a prior party, or other cause other than actual payment in full hereof, and

promises, in case suit is instituted to collect the same or any portion hereof, to pay such sum as the Court may adjudge reasonable in such suit as attorneys fees. At the option of the holder, the venue of any such suit may be laid . in King County, Washington.

> "HORGAN PACKING COMPANY
> By /s/ Ed E. Horgan
> Its President
> By /s/ Joseph D. Holmes
> Secretary"

This note was endorsed on the back by the following persons, in this order: Ed E. Horgan, G. L. Risbell, Ralph Fleming, Ross M. Cooledge (the stockholders of the corporation), and respondent Leonard Downie. Contemporaneously with the endorsement of the note the endorsers executed an agreement, which provided, in part, as follows:

"AGREEMENT

"Agreement entered into this 31st day of October, 1952, by and between Ralph Fleming, Ed E. Horgan and G. L. Risbell, and Ross M. Cooledge of the first part (hereinafter referred to as 'the first parties') and Leonard Downie (hereinafter referred to as 'the second party'),

"WITNESSETH:

"WHEREAS, the first parties are the owners of 60,000 shares of the One Dollar par value common stock of Horgan Packing Company, being all of the authorized and outstanding shares of the said company, and

"WHEREAS, the first parties are makers and endorsers of a certain promissory note dated October 31, 1952 in the sum of $7,500.00 payable six months from date by Horgan Packing Company to Peoples National Bank of Washington, upon which promissory note the second party has agreed to become guarantor, upon terms and conditions hereinafter set forth,

"Now, THEREFORE, IT IS AGREED AS FOLLOWS:

"1. The first parties hereby give, grant, sell and assign to the second party, 30,500 shares of the One Dollar par value common stock of Horgan Packing Company and all rights thereunder, the delivery and receipt of which shares are hereby acknowledged by the second party, for the consideration of One Hundred ($100.00) Dollars, receipt whereof is hereby acknowledged.

"2. Five years from the date hereof, the first parties, their heirs and assigns, shall have the right to purchase,

. . . the 30,500 shares of stock of Horgan Packing Company, above mentioned, upon the following terms and conditions; . . .

"b) the first parties, their successors and assigns, shall pay to the second party the book value, as of the fifth anniversary of the execution of this Agreement, of the said 30,500 shares of stock of Horgan Packing Company . . .

"3. If the first parties shall default in their said promissory note in favor of Peoples National Bank, at the termination of the first renewal period of six months, or at any time thereafter, and if the second party shall be called upon and shall make good said default of the first parties either in whole or in part, then the right of purchase granted to the first parties by paragraph 2 herein, shall be null and void and of no effect; . . ."

The note was secured by a chattel mortgage on certain personal property owned by the corporation. These two instruments were executed and delivered to the bank on October 31, 1952.

The corporation was unable to pay the note at maturity because it had ceased to continue its operations, and, after two extensions of time granted by the bank (which were agreed to by all the endorsers), the bank called upon respondent to pay the balance of the note at the extended maturity date. The only payment of principal which had been made by the corporation was the sum of four hundred fifty dollars which it received from an insurance company in settlement of a fire loss. On October 6, 1953, respondent paid the note and received it from the bank endorsed "without recourse," together with the chattel mortgage, which was assigned to him.

Respondent then demanded payment of the note from the other endorsers without success and thereupon commenced this action to recover from appellant as prior endorser thereon.

Appellant assigns as error the striking of his first affirmative defense, which alleged:

"That the defendant, Ross M. COOLEDGE, endorsed a certain promissory note as a guarantor upon the terms and conditions as set forth in a written agreement [the agreement quoted above], a copy of which is hereto attached as Ex-

hibit 'A' and by this reference incorporated herein at length. That it was the intention of all signators and parties to said written agreement that said agreement set forth fully all of the rights and liabilities of all parties insofar as they were endorsers and guarantors of said note, . . ."

At the beginning of the trial after the opening statements of counsel, respondent moved that appellant's first affirmative defense be stricken, since ". . . it is clear on the face of the agreement that it does not provide the exclusive remedy in the event of default on the note." Respondent argued, in support of the motion, that the agreement was not ambiguous or in conflict with the note and did not constitute a defense to the note under the negotiable instruments law. Appellant contended that the agreement was ambiguous and that oral testimony should be admissible to show that ". . . as between the parties there was a different order of liability or no liability intended between the endorsers." The court then stated, with reference to the agreement, "It looks awfully plain to me." The court later ruled that oral testimony was inadmissible to contradict the agreement and/or the note in view of the pleadings.

An oral motion to strike will be treated as a demurrer. *Magee v. Cohn,* 187 Wash. 157, 59 P. (2d) 1131 (1936); *King County v. Sutter,* 45 Wn. (2d) 326, 274 P. (2d) 347 (1954). Since appellant made no motion to amend or plead over, he will be deemed to have stood on his pleadings. Any defect in not entering a formal order at the time the motion was granted was cured by the court when it entered the order of April 14, 1955, striking the first affirmative defense.

In an action on a promissory note, the defendant has the burden of proving his affirmative defenses. *First Bank of Cordova v. Tjosevig,* 138 Wash. 231, 244 Pac. 736 (1926); *Ewell v. Turney,* 39 Wash. 615, 81 Pac. 1047 (1905).

Appellant here did not plead an agreement of any nature different from the one set out in part herein. The agreement is not ambiguous as we read it, nor is it in conflict with the provisions of the note. It is obviously a security arrangement whereby respondent would have con-

trol of the operation of the corporation for his protection as an accommodation endorser of the corporation's note. If, at the end of five years, the operation were a success, the shareholders could, by the exercise of their option to repurchase the stock at its then book value, again resume control of the corporation. Such agreements are not foreign to transactions of this nature. The trial court was of the same opinion as we are, and did not err in sustaining the "demurrer" to the first affirmative defense.

 This disposition of the first assignment of error also disposes of the second assignment of error, which is that "The court erred in refusing to admit testimony offered by appellant to show the intent of the parties in the execution of Ex. 6 [the agreement]." However, since the agreement is not ambiguous on its face and does not conflict with or alter the terms of the note, nor purport to change the order of the endorsements, parol evidence is inadmissible to contradict the express terms of that agreement.

As stated in *Washington Fish & Oyster Co. v. G. P. Halferty & Co.*, 44 Wn. (2d) 646, 269 P. (2d) 806:

" 'The rule is universal that the written contract itself must be resorted to as the source of authority for receiving parol evidence. Parol evidence is never admissible to create an ambiguity, but only to explain or remove an ambiguity apparent on the face of the instrument, or to identify a subject-matter otherwise uncertain.' "

The next question is whether the respondent may recover on the note. For convenience, we set forth certain sections of the negotiable instruments act, which have a bearing on the problem before us:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." RCW 62.01.063.

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such

holder at the time of taking the instrument knew him to be only an accommodation party." RCW 62.01.029.

"Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time." RCW 62-.01.026.

"The holder of a negotiable instrument may sue thereon in his own name; and payment to him in due course discharges the instrument." RCW 62.01.051.

"The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay same. All other parties are 'secondarily' liable." RCW 62.01.192.

"As respects one another, indorsers are liable prima facie in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise. . . ." RCW 62.01.068.

 Since none of the endorsers received any part of the seventy-five hundred dollars advanced by the bank to the corporation on the note, they were all accommodation endorsers within RCW 62.01.029, and each is liable as an endorser as provided in RCW 62.01.063. All the persons who signed this note as endorsers agreed that they were jointly and severally liable as principals thereon. RCW 62.01.192. *W. F. Brown & Sons, Inc. v. Easterly* (La. App.), 4 So. (2d) 73, and cases cited. Where, as here, the instrument has been paid by one party primarily liable thereon, the instrument is not discharged, but the party so paying acquired title to the note and succeeds to all the rights of the payee.

 Respondent paid the note upon the extended maturity date, received the note from the payee bank with the bank's qualified endorsement (without recourse), and thereupon became a holder for value as provided in RCW 62.01.026. He is entitled to sue thereon in his own name (RCW 62.01.051), and may recover *on the note* as against appellant, who is a prior endorser. RCW 62.01.029.

The third assignment of error is predicated upon the court's permitting a trial amendment to the complaint relating to attorneys'. fees and granting judgment therefor.

Prior to trial, respondent filed a notice of his intention to

ask for a trial amendment to include in the prayer a request for reasonable attorneys' fees of fifteen hundred dollars. The trial court granted this motion, but only allowed an attorneys' fee of eleven hundred dollars in entering judgment.

As stated above, this is an action *on the note*, and the appellant, as an endorser, is bound by his promise thereon to pay a reasonable attorneys' fee. Respondent, as a holder of the note for value, is entitled to recover the same items as the bank as payee would have recovered. The court did not commit error in allowing the trial amendment or including in the judgment the amount of eleven hundred dollars as a reasonable attorneys' fee.

The last assignment of error reads as follows:

"The court erred in refusing to find that the respondent was more than fully paid by having appropriated and converted the chattels covered by the chattel mortgage which chattels he had taken possession and control of."

Appellant does not set out verbatim any proposed finding of fact refused by the trial court as required by Rules on Appeal 42(1)(f) and 43 (34A Wn. (2d) 45, 47), as amended, effective January 2, 1953.

This court has consistently held that failure to comply with these rules will make the findings of fact the established facts of the case. *Paulson v. Higgins*, 43 Wn. (2d) 81, 260 P. (2d) 318, 266 P.. (2d) 800 (1953), and cases cited. Likewise, lack of compliance with these rules where error is predicated on the court's refusal to make a proposed finding, compels us to disregard the claimed error. We, therefore, shall not consider the fourth assignment of error.

Judgment affirmed.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and OTT, JJ., concur.